Ex Kano S. Sams II (SBN 192936)
Email: esams@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: 310-201-9150

Jeffrey S. Goldenberg (*pro hac vice* to be filed)
Email: jgoldenberg@gs-legal.com
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: 513-345-8297

*Counsel for Plaintiff*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BOWDEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSLEY, INC., a Delaware corporation,<br><br>Defendant. | Case No. _<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **NEGLIGENCE;**<br>2. **NEGLIGENCE PER SE;**<br>3. **INVASION OF PRIVACY;**<br>4. **UNJUST ENRICHMENT;**<br>5. **BAILMENT;**<br>6. **BREACH OF IMPLIED CONTRACT;**<br>7. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>8. **BREACH OF CONFIDENCE;**<br>9. **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**<br>10. **VIOLATION OF THE CALIFORNIA CONSUMER RECORDS ACT;**<br>11. **VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1   Plaintiff John Bowden, individually and on behalf of others similarly situated,

2   brings this action against Defendant Bosley, Inc. to obtain damages, restitution, and

3   injunctive relief for the Class, as defined below. All allegations made in this complaint

4   are made based on information and belief and investigation of counsel, except those

5   allegations that pertain to Plaintiff, which are based on personal knowledge. Each

6   allegation in this Complaint has evidentiary support, or alternatively, pursuant to Rule

7   11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support

8   after a reasonable opportunity for further investigation or discovery.

9   **JURISDICTION**

10   1.    This Court has subject matter jurisdiction pursuant to the Class Action

11   Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate amount in

12   controversy exceeds $5 million, exclusive of interest and costs; and minimal diversity

13   exists because at least one plaintiff and the defendant are citizens of different states.

14   **PARTIES**

15   2.    Plaintiff John Bowden ("Plaintiff") is a resident of Astoria, New York.

16   Plaintiff is (and was at all relevant times) a citizen of the State of New York. Plaintiff

17   purchased hair implants from Bosley in February, 2019.

18   3.    Defendant Bosley, Inc. ("Bosley") is a Delaware corporation registered to

19   do business in California with its principal place of business at 9100 Wilshire

20   Boulevard, East Tower Penthouse, Beverly Hills, California 90212. Bosley has

21   locations and markets, advertises, distributes, and sells its products and services

22   throughout the United States.

23   4.    This Court has personal jurisdiction over Bosley because its principal

24   place of business is in California and has sufficient contacts with this District.

25   Additionally, the conduct complained of occurred in and/or emanated from this State

26   and District because the personal information compromised in the Data Breach alleged

27   in paragraph 7 below was likely stored or maintained (or both) in accordance with

28   practices emanating from this District.

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, or emanated from (or some combination) this District. Venue is additionally proper because Bosley conducts substantial business in this District and has its principal place of business in this District.

## NATURE OF THE ACTION

6.      Businesses that collect and store sensitive information about their customers have a duty to safeguard that information and ensure it remains private. This responsibility is essential where a business keeps and stores its customers' highly personal information, such as their names, email addresses, phone numbers, social security numbers, bank account and financial information.

7.      This class action arises out of the recent targeted ransomware attack (the "Ransomware Attack) that caused a data breach (the "Data Breach") at Bosley, a leader in the hair restoration industry. Due to Bosley's failure to safeguard confidential information, more than 100,000 customers and employees have had their confidential personal and financial information accessed by a third party without authorization and stolen.

8.      Bosley has performed over 300,00 hair transplant procedures for client patients across the United Sates and the world[1] and collects significant data regarding its client patients. This data often includes sensitive personal information such as names, Social Security numbers, driver license numbers, and financial information. Bosley also obtains and collects sensitive personal information in the context of an employment relationship, such as names, Social Security numbers, driver license numbers, and financial information.

9.      Plaintiff's and Class Members' sensitive personal information—which was entrusted to Bosley—was compromised and unlawfully accessed due to the

---

[1] https://www.bosley.com/about/ (last visited Feb. 9, 2021).

CLASS ACTION COMPLAINT

3

Ransomware Attack. The confidential information unlawfully accessed and stolen included Personal Financial Information ("PFI") such as financial account numbers and payment card numbers, and Personally Identifiable Information ("PII") such as names, Social Security Numbers, and driver's license numbers (collectively, "Private Information" or "PI").

10.    In order to purchase hair implants and be accepted for a two-year payment plan, Plaintiff provided his name, Social Security number, financial account information, address, and phone number to Bosley. Plaintiff was notified of Bosley's Data Breach and his PI being compromised upon receiving a notice letter dated January 26, 2021.

11.    Bosley publicly disclosed the Data Breach on January 26, 2021 by sending notice to its customers and certain state authorities.[2] Attached as Exhibit A and incorporated by reference is a copy of the notice Bosley mailed Plaintiff. Apparently, Bosley "identified a ransomware infection in its network" on August 17, 2020 and then retained legal counsel "to provide advice and assistance investigating and responding to the incident."[3] Bosley's legal counsel then engaged cybersecurity consultants to conduct a forensic investigation that discovered evidence on September 24, 2020, suggesting that the actors responsible for the ransomware infection gained access to systems containing PI of more than 100,000 Bosley customers and employees. Id. The data contained in the accessed systems include individuals' names, Social Security numbers, financial account and/or payment card numbers, and driver's license numbers. Id.

12.    In other words, Bosley notified Plaintiff and his fellow customers of the Data Breach five months after the Ransomware Attack and four months after Bosley

---

[2] *See, e.g.,* https://oag.ca.gov/system/files/Bosley%20-%20California%20Notification.pdf (last visited Mar. 25. 2021); https://media.dojmt.gov/wp-content/uploads/Bosley-notif.pdf (last visited Mar. 25, 2021).
[3] https://apps.web.maine.gov/online/aeviewer/ME/40/cae0e046-07c6-4e73-b45e-63126a5fafe6/82608a5c-f4db-4b08-90fc-2fb72ac10f61/document.html

confirmed that actors responsible for the Ransomware Attack gained access to more than 100,000 customers' PI.

13.    As a result of the Data Breach–and Bosley's failure to provide timely notification of the Data Breach to affected customers–Plaintiff and Class Members suffered ascertainable losses in the form of loss of the value of their private and confidential information, loss of the benefit of their contractual bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the Ransomware Attack.

14.    Plaintiff brings this class action lawsuit on behalf of those similarly situated in response to Bosley's inadequate safeguarding of Class Members' PI and failure to provide timely and adequate notice to Plaintiff and Class Members that their information had been subject to the unauthorized access.

15.    Bosley maintained the PI in a reckless manner.

16.    Upon information and belief, the potential for improper disclosure of Plaintiff's and Class Members' PI was a known risk to Bosley, and thus Bosley was on notice that failing to take steps necessary to secure the PI from those risks left that property in a dangerous condition.

17.    In addition, Bosley and its employees failed to properly monitor the computer network and systems that housed the PI.

18.    Had Bosley properly monitored its property, it would have discovered the Ransomware Attack and Data Breach sooner.

19.    Even though the threat of a data breach had been a well-known risk to Bosley, especially due to the valuable and sensitive nature of the data Bosley collects, stores and maintains, Bosley failed to take reasonable steps to adequately protect the ultra-sensitive PI of Bosley customers and employees.

20.    The Data Breach was a direct result of Bosley's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect PI.

21.    Plaintiff's and Class Members' identities and financial security are now at risk because of Bosley's negligent conduct since the PI collected and maintained by Bosley is now in the hands of data thieves.

22.    The highly confidential PI that was compromised in the Ransomware Attack and Data Breach is considered a valuable treasure trove to cyber-thieves that can be sold on the Dark Web and/or used to commit identity theft or other fraud for the foreseeable future.

23.    Armed with the PI accessed in the Ransomware Attack, data thieves can commit a variety of crimes including, for example, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits (such as filing for unemployment benefits), filing fraudulent tax returns using Class Members' information, obtaining driver licenses in Class Members' names but with another person's photograph, using Class Members' financial information to make unauthorized purchases, and giving false information to police during an arrest.

24.    As a result of the Ransomware Attack, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future spend time to take additional efforts to closely monitor their financial accounts to guard against identity theft.

25.    Plaintiff and Class Members may also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft and financial fraud.

26.    Bosley's failure to implement and follow proper security procedures has resulted in ongoing harm to Plaintiff and Class Members who will continue to experience a lack of data security for the indefinite future and remain at serious risk of identity theft and fraud that would result in significant monetary loss.

27.    Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PI was accessed during the Data Breach.

28.     Accordingly, Plaintiff brings this action against Bosley seeking redress for its unlawful conduct asserting claims for negligence, negligence per se, invasion of privacy, unjust enrichment, bailment, breach of implied contract, breach of implied covenant of good faith and fair dealing, breach of confidence, violation of California's Unfair Competition Law and Consumer Records Act, and violation of New York Business Law § 349. Plaintiff seeks to recover damages and other relief resulting from the Ransomware Attack, including but not limited to, compensatory damages, reimbursement of out-of-pocket costs that Plaintiff and others similarly situated will be forced to bear, compensation for time reasonably spent by Plaintiff and Class Members to protect their PI, and declaratory judgment and injunctive relief, such as improvements to Bosley's data security system, future annual audits, and adequate credit and ID theft monitoring and protection services funded by Bosley to mitigate future harms that are certain to occur in light of the scope of this breach.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

29.     Bosley claims that it is "the world's most trusted and experienced hair restoration and transplant expert" that has "pioneered the art of hair restoration for both men and women using our world-class clinical resources, resources, and technology."

30.     Bosley employs a large number of individuals and as of February, 2021 maintains approximately 70 clinics and offices throughout the United States.

31.     On information and belief, as a condition of service, Bosley collects and maintains PI about its customers. Also, Bosley obtains PI within the context of a person's working relationship with Bosley. Accordingly, Bosley has the PI of job applicants, employees (whether temporary or permanent), contingent workers, retirees, and former employees.

### *The Ransomware Attack and Data Breach*

32.     On August 17, 2020, Bosley experienced a data security incident that resulted in the encryption of important data Bosley's computer systems that prevented Bosley from accessing it.

33.     According to Bosley, the company's computer systems was the subject of a targeted malware ransomware attack which prevented employees from accessing computer systems and resulted in unauthorized access to confidential files.

34.     A ransomware attack deploys a type of malicious software that blocks access to a computer system or data, usually by encrypting it, until the target pays a fee to the attacker.

35.     Upon discovering this incident, Bosley launched an investigation and engaged a cybersecurity firm to address the incident, restore operations, and to determine whether PI may have been accessed.

36.     On September 24, 2020, the investigation determined that there was unauthorized activity on Bosley's network which resulted in unauthorized third-party access to confidential information of Bosley customers.

37.     The confidential information that was accessed without authorization included "personal information of Bosley customers and employees" such as "names, Social Security numbers, driver license numbers and financial account and/or payment card numbers."

38.     On information and belief, the PI was not encrypted prior to the Ransomware Attack.

39.     Upon information and belief, the Ransomware Attack was targeted at Bosley due to its status as a leading hair restoration and transplant company that collects valuable personal, medical, and financial data on its many customers, as well as its employees.

40.     Upon information and belief, the Ransomware Attack was expressly designed to gain access to private and confidential data, including (among other things) the PI of Plaintiff and the Class Members.

41.     Bosley notified Plaintiff, in a notice letter dated January 26, 2021, that his PI was accessed without authorization in the Data Breach.

42.     Plaintiff further believes that his stolen PI was subsequently sold on the Dark Web.

43.     Upon informing Bosley's customers that their PI was accessed without authorization, Bosley offered those impacted individuals a complimentary one-year membership to credit and identity monitoring services through TransUnion.

44.     The offer of credit and identity monitoring services, as well as Bosley's suggestion to "remain vigilant" is an acknowledgment by Bosley that the impacted customers are subject to an imminent threat of identity theft and financial fraud.

45.     Despite acknowledging that data thieves accessed Plaintiff's and the Class Members' PI without authorization, Bosley did not begin to notify affected individuals until January 26, 2021, over five months after the Ransomware Attack occurred.

46.     Bosley had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep their PI confidential and to protect it from unauthorized access and disclosure.

47.     Plaintiff and Class Members provided their PI to Bosley with the reasonable expectation and mutual understanding that Bosley would comply with its obligations and representations to keep such information confidential and secure from unauthorized access.

48.     Bosley failed to uphold its obligations to Plaintiff and Members of the Class. As a result, Plaintiff and Class Members have been significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

### The Ransomware Attack and Data Breach were Foreseeable Risks of which Defendant was on Notice

49.     It is well known that PI, including social security numbers and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

50.     According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.

51.     Consumers place a high value not only on their PI, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

52.     Consumers are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

53.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Bosley knew or should have known that its electronic records would be targeted by cybercriminals.

54.     Therefore, the recent increase in such attacks, and attendant risk of future attacks, was widely known to Bosley.

### *At All Relevant Times Bosley Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information*

55.     At all relevant times, Bosley had a duty to Plaintiff and Class Members to properly secure their PI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and

Class Members, and to promptly notify Plaintiff and Class Members when Bosley became aware that their PI may have been compromised.

56.     Bosley s duty to use reasonable security measures arose as a result of the special relationship that existed between Bosley, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted Bosley with their PI when they purchased products or accepted employment from Bosley.

57.     Bosley had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Bosley breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

58.     Security standards commonly accepted among businesses that store PI using the internet include, without limitation:

a.     Maintaining a secure firewall configuration;

b.     Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.     Monitoring for suspicious or irregular traffic to servers;

d.     Monitoring for suspicious credentials used to access servers;

e.     Monitoring for suspicious or irregular activity by known users;

f.     Monitoring for suspicious or unknown users;

g.     Monitoring for suspicious or irregular server requests;

h.     Monitoring for server requests for PI;

i.     Monitoring for server requests from VPNs; and

j.     Monitoring for server requests from Tor exit nodes.

59.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity and protection of PII, which includes basic security standards applicable to all types of businesses.

60.     The FTC recommends that businesses:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    a.     Identify all connections to the computers where you store sensitive information.

    b.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.     Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

    d.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

    e.     Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

    f.     Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

    g.     Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

    h.     Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or

computers, and higher-than-average traffic at unusual times of the day.

    i.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

61.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.    Because Class Members entrusted Bosley with their PI, Bosley had, and has, a duty to the Class Members to keep their PI secure.

63.    Plaintiff and the other Class Members reasonably expected that when they provide PI to Bosley, Bosley would safeguard their PI.

64.    Nonetheless, Bosley failed to upgrade and maintain its data security systems in a meaningful way so as to prevent the data breach. Had Bosley properly maintained its systems and adequately protected them, it could have prevented the data breach.

***Plaintiff and Class Members Have Been Injured and Will Suffer Additional Harm***

65.    To date, Bosley has merely offered complimentary identity theft and credit monitoring services for one year. This offer, however, is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and it entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PI.

66.    Furthermore, Bosley's identity theft and credit monitoring offer to
Plaintiff and Class Members squarely places the burden on Plaintiff and Class
Members, rather than on the Bosley, to investigate and protect themselves from
Bosley's tortious acts resulting in the Data Breach. Rather than automatically enrolling
Plaintiff and Class Members in identity theft and credit monitoring services upon
discovery of the breach, Bosley merely sent instructions offering the services to
affected individuals with the recommendation that they sign up for the services.

67.    As a result of the Data Breach and Bosley's failure to provide timely
notice to Plaintiff and Class members, Plaintiff's and Class Members' PI are now in
the hands of unknown hackers, and Plaintiff and Class members now face an imminent
heightened, and substantial risk of identity theft and other fraud, which is a concrete
and particularized injury traceable to Bosley's conduct.

68.    The consequences of Bosley's failure to keep Plaintiff's and Class
members' PI and all information associated with their PI secure and protected are
severe.

69.    Thieves are already using the PI stolen to attempt to commit actual fraud
and identity theft.

70.    Since the Data Breach occurred in August 2020, Plaintiff has experienced
an increase in scam phone calls, which appeared to be placed with the intent to obtain
personal information to commit identity theft by way of a social engineering attack.

71.    In particular, in January and February of 2021, Plaintiff received multiple
calls from individuals claiming to be calling about a package Plaintiff ordered from
Amazon and requesting more information. However, Plaintiff has not ordered anything
from Amazon.

72.    Since being notified of the Data Breach and the unauthorized access to his
PI, Plaintiff has spent approximately twelve hours searching his financial accounts for
fraudulent activity, such as unauthorized charges or bank withdrawals, and has
thoroughly reviewed his bank statements. In addition, Plaintiff has placed a fraud alert

with one of the three major credit agencies.

73.    Theft of personal and financial information is a serious and growing problem in the United States.

74.    Personal and financial information is a valuable commodity to identity thieves. As cyber security experts and journalists have recognized, the PI leaked in a data breach presents a treasure trove of information which could be sold on the Dark Web to other criminals and fraudsters to be used in countless illegal and fraudulent ways.

75.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."

76.    The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

77.    The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identify thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name. As the GAO Report states, this type of identity theft is the most harmful because it often takes some time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.

78.    Accordingly, identify theft victims must spend countless hours and large amounts of money repairing the impact to their credit.

79.    PI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

80.    A 2014 study by the U.S. Department of Justice found that the average cost to a victim of identity theft is $1,343.

81.    According to a 2019 report, identity fraud caused nearly $17 billion in damage to victims and that the most common types of identity fraud are opening new credit card and bank accounts, business and personal loans, auto loans, and student loans.

82.    Indeed, data breaches and identity theft and financial fraud have a crippling effect on individuals and detrimentally impact the economy as a whole.

83.    For all the above reasons, Plaintiff and Class Members have suffered harm and there is a substantial risk of future injury to Plaintiff and Class Members that is imminent and concrete and that will continue for years to come.

84.    As a direct and proximate result of Bosley's wrongful actions and inaction, Plaintiff and Class Members have suffered injury and damages, including the increased risk of identity theft, identity fraud, and financial fraud, improper disclosure of PI, the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft and the inability to use debit cards because those cards were canceled, suspended, or otherwise rendered unusable as a result of the data breach, and/or false or fraudulent charges stemming from the data breaches.

85.    Plaintiff brings this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves, and the following proposed Class and Sub-Class (collectively,

the "Class"):

The **Nationwide** Class is defined as follows: All individuals residing in the United States whose Private Information was compromised in the data breach that occurred on August 17, 2020.

The **New York Sub-Class** is defined as follows: All individuals residing in New York whose Private Information was compromised in the data breach that occurred on August 17, 2020.

86.     Excluded from the proposed Class are: Bosley, any entity in which Bosley has a controlling interest, is a parent or subsidiary, or which is controlled by Bosley, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Bosley; and judicial officers to whom this case is assigned and their immediate family members.

87.     Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

88.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and/or (c)(4).

89.     **Numerosity. Fed. R. Civ. P. 23(a)(1).** Pursuant to Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, the proposed Class includes potentially one hundred thousand individuals whose PI was compromised in the Data Breach. Class Members may be identified through objective means, including by and through Bosley's business records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

90.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Pursuant to Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual

Class Members. The common questions include:

(a)    Whether Bosley had a legal duty to implement and maintain reasonable security procedures and practices for the protection of Class Members' personal and financial information, including by vendors;

(b)    Whether Bosley breached its legal duty to implement and maintain reasonable security procedures and practices for the protection of Plaintiff's and Class Members' personal and financial information;

(c)    Whether Bosley's conduct, practices, actions, and omissions, resulted in or was the proximate cause of the data breach, resulting in the loss of personal and financial information of Plaintiff and Class Members;

(d)    Whether Bosley had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

(e)    Whether Bosley breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

(f)    Whether and when Bosley knew or should have known that Bosley's computer systems were vulnerable to attack;

(g)    Whether Bosley failed to implement and maintain reasonable and adequate security measures, procedures, and practices to safeguard Plaintiff's and Class Members' personal and financial information, including by vendors;

(h)    Whether Bosley breached implied contracts with Plaintiff and the Class in failing to have adequate data security measures despite promising to do so;

(i)    Whether Bosley's conduct was negligent;

(j)    Whether Bosley's conduct was per se negligent;

(k)    Whether Bosley's practices, actions, and omissions constitute unfair or deceptive business practices;

(l)    Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Bosley's conduct, including increased risk of identity theft and loss of value of their personal and financial information; and

(m)     Whether Plaintiff and Class members are entitled to relief, including damages and equitable relief.

91.     **Typicality. Fed. R. Civ. P. 23(a)(3)**. Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff, like all members of the Class, were injured through Bosley's uniform misconduct described above and asserts similar claims for relief. The same events and conduct that give rise to Plaintiff's claims also give rise to the claims of every other Class Member because Plaintiff and each Class Member is a person that has suffered harm as a direct result of the same conduct engaged in by Bosley and resulting in the data breach.

92.     **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)**. Pursuant to Rule 23(a)(4), Plaintiff and their counsel will fairly and adequately represent the interests of the Class Members. Plaintiff has no interest antagonistic to, or in conflict with, the interests of the Class Members. Plaintiff's lawyers are highly experienced in the prosecution of consumer class actions and data breach cases.

93.     **Superiority (Fed. R. Civ. P. 23(b)(3)**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual members of the Class because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

94.     Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Bosley has acted, or have refused to act, on grounds generally applicable to the Class, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate as to the Class as a whole.

# COUNT I

## NEGLIGENCE

### (On Behalf of Plaintiff and the Class)

95.    Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

96.    Bosley owed a duty of care to Plaintiff and Class Members to use reasonable means to secure and safeguard the entrusted PI, to prevent its unauthorized access and disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems. These common law duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PI because hackers routinely attempt to steal such information and use it for nefarious purposes, Bosley knew that it was more likely than not Plaintiff and other Class Members would be harmed by such exposure of their PI.

97.    Bosley's duties to use reasonable security measures also arose as a result of the special relationship that existed between Bosley, on the one hand, and Plaintiff and Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members entrusted Bosley with their PI in connection with purchasing services or applying for employment from Bosley. Bosley alone could have ensured that its data security systems and practices were sufficient to prevent or minimize the data breach.

98.    Bosley's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PI. Various FTC publications and data security breach orders further form the basis of Bosley's duties. In addition, individual states have enacted statutes based upon

the FTC Act that also created a duty.

99.    Bosley breached the aforementioned duties when it failed to use security practices that would protect the PI provided to it by Plaintiff and Class Members, thus resulting in unauthorized exposure and third party access to the Plaintiff's and Class Members' PI.

100.   Bosley further breached the aforementioned duties by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols to comply with the applicable laws and safeguard and protect Plaintiff's and Class Members' PI within its possession, custody, and control.

101.   As a direct and proximate cause of failing to use appropriate security practices, Plaintiff's and Class Members' PI was exposed, disseminated and made available to unauthorized third parties.

102.   Bosley admitted that Plaintiff's and Class Members' PI was wrongfully disclosed as a result of the Data Breach.

103.   The breach caused direct and substantial damages to Plaintiff and Class Members, as well as the possibility of future and imminent harm through the dissemination of their PI and the greatly enhanced risk of credit fraud or identity theft.

104.   By engaging in the forgoing acts and omissions, Bosley committed the common law tort of negligence. For all the reasons stated above, Bosley's conduct was negligent and departed from reasonable standards of care including by, but not limited to: failing to adequately limit access to and protect the PI; failing to conduct regular security audits; and failing to provide adequate and appropriate supervision of persons having access to Plaintiff's and Class Members' PI.

105.   But for Bosley's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

106.   Neither Plaintiff nor Class Members contributed to the breach or subsequent misuse of their PI as described in this Complaint. As a direct and proximate

result of Bosley's actions and inactions, Plaintiff and Class Members have been put at an increased risk of credit fraud or identity theft, and Bosley has an obligation to mitigate damages by providing adequate credit and identity monitoring services. Bosley is liable to Plaintiff and Class Members for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year. Bosley is also liable to Plaintiff and Class Members to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their PI, including the amount of time Plaintiff and the Class Members have spent and will continue to spend as a result of Bosley's negligence. Bosley is also liable to Plaintiff and Class Members to the extent their PI has been diminished in value because Plaintiff and Class Members no longer control their PI and to whom it is disseminated.

**COUNT II**

**NEGLIGENCE PER SE**

**(On Behalf of Plaintiff and the Class)**

107.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

108.   Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Bosley had a duty to provide fair and adequate computer systems and data security to safeguard the PI of Plaintiff and Class Members.

109.   The FTC Act prohibits "unfair . . . practices in or affecting commerce," which the FTC has interpreted to include businesses' failure to use reasonable measures to protect PI. The FTC publications and orders described above also form part of the basis of Bosley's duty in this regard.

110.   Bosley solicited, gathered, and stored PI of Plaintiff and the Class Members to facilitate transactions which affect commerce.

111.   Bosley violated the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PI of Plaintiff and the Class Members and not

complying with applicable industry standards, as described herein. Bosley's conduct was particularly unreasonable given the nature and amount of PI obtained and stored and the foreseeable consequences of a data breach on Bosley's systems.

112. Bosley's violation of the FTC Act (and similar state statutes) constitutes negligence per se.

113. Plaintiff and the Class Members are within the class of persons that the FTC Act was intended to protect.

114. The harm that occurred as a result of the breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures caused the same harm as that suffered by Plaintiff and the Class Members.

115. As a direct and proximate result of Bosley's negligence per se, Plaintiff and the Class Members have suffered, and continue to suffer, damages arising from the breach as described above.

## **COUNT III**

### **INVASION OF PRIVACY**

### **(On Behalf of Plaintiff and the Class)**

116. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

117. Bosley invaded Plaintiff's and the Class Members' right to privacy by allowing the unauthorized access to Plaintiff's and Class Members' PI and by negligently maintaining the confidentiality of Plaintiff's and Class Members' PI, as set forth above.

118. The intrusion was offensive and objectionable to Plaintiff, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiff's and Class Members' PI was disclosed without prior written authorization of Plaintiff and the Class.

119. The intrusion was into a place or thing which was private and is entitled to

be private, in that Plaintiff and the Class Members provided and disclosed their PI to Bosley privately with an intention that the PI would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

120.    As a direct and proximate result of Bosley's above acts, Plaintiff's and the Class Members' PI was viewed, distributed, and used by persons without prior written authorization and Plaintiff and the Class Members suffered damages as described herein.

121.    Bosley has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class Members' PI with a willful and conscious disregard of Plaintiff's and the Class Members' right to privacy.

122.    Unless and until enjoined, and restrained by order of this Court, Bosley's wrongful conduct will continue to cause Plaintiff and the Class Members great and irreparable injury in that the PI maintained by Bosley can be viewed, printed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class, and Bosley may freely treat Plaintiff's and Class Members' PI with sub-standard and insufficient protections.

**COUNT IV**

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and the Class)**

123.    Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

124.    Plaintiff pleads this claim, to the extent necessary, in the alternative to his claims at law.

125.    Plaintiff and Class Members have an interest, both equitable and legal, in their PI that was conferred upon, collected by, and maintained by Bosley and that was

CLASS ACTION COMPLAINT

24

ultimately compromised in the Data Breach.

126.   Bosley, by way of its acts and omissions, knowingly and deliberately enriched itself by saving the costs it reasonably should have expended on security measures to secure Plaintiff's and Class Members' PI.

127.   Bosley also understood and appreciated that the PI pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Bosley maintaining the privacy and confidentiality of that PI.

128.   Instead of providing for a reasonable level of security that would have prevented the Data Breach—as is common practice among companies entrusted with such PI— Bosley instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class Members. Nevertheless, Bosley continued to obtain the benefits conferred on it by Plaintiff and Class Members. The benefits conferred upon, received, and enjoyed by Bosley were not conferred officiously or gratuitously, and it would be inequitable and unjust for Bosley to retain these benefits.

129.   Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result. As a result of Bosley's decision to profit rather than provide requisite security, and the resulting Data Breach disclosing Plaintiff's and Class Members' PI, Plaintiff and Class Members suffered and continue to suffer considerable injuries in the forms of, inter alia, identity theft, attempted identity theft, time and expenses mitigating harms, diminished value of PI, loss of privacy, and increased risk of harm.

130.   Thus, Bosley engaged in opportunistic conduct in spite of its duties to Plaintiff and Class Members, wherein it profited from interference with Plaintiff's and Class Members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Bosley to retain the benefits it derived as a consequence of its conduct.

131.   Accordingly, Plaintiff, on behalf of themselves and the Class, respectfully request that this Court award relief in the form of restitution or disgorgement in the

amount of the benefit conferred on Bosley as a result of its wrongful conduct,
including specifically, the amounts that Bosley should have spent to provide
reasonable and adequate data security to protect Plaintiff's and Class Members' PI,
and/or compensatory damages.

## COUNT V

### BAILMENT

### (On Behalf of Plaintiff and the Class)

132.    Plaintiff re-alleges and incorporates by reference all prior paragraphs as if
fully set forth herein.

133.    Plaintiff and Class Members provided, or authorized disclosure of, their
PI to Bosley for the exclusive purpose of buying services or applying for employment.

134.    In allowing their PI to be made available to Bosley, Plaintiff and Class
Members intended and understood that Bosley would adequately safeguard their PI.

135.    For its own benefit, Bosley accepted possession of Plaintiff's and Class
Members' PI for the purpose of making available its own services.

136.    By accepting possession of Plaintiff's and Class Members' PI, Bosley
understood that Plaintiff and Class Members expected Bosley to adequately safeguard
their personal information. Accordingly, a bailment (or deposit) was established for the
mutual benefit of the parties. During the bailment (or deposit), Bosley owed a duty to
Plaintiff and Class Members to exercise reasonable care, diligence, and prudence in
protecting their personal information.

137.    Bosley breached its duty of care by failing to take appropriate measures to
safeguard and protect Plaintiff's and Class Members' personal information, resulting in
the unlawful and unauthorized access to and misuse of Plaintiff's and Class Members'
PI.

138.    As a direct and proximate result of Bosley's breach of its duty, Plaintiff
and Class Members suffered consequential damages that were reasonably foreseeable
to Bosley, including but not limited to the damages set forth above.

CLASS ACTION COMPLAINT
26

139.   As a direct and proximate result of Bosley's breach of its duties, the PI of Plaintiff and Class Members entrusted, directly or indirectly, to Bosley during the bailment (or deposit) was damaged and its value diminished.

## COUNT VI

### BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and the Class)

140.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

141.   Bosley invited applicants, including Plaintiff and the Class Members, to apply for services and employment. As consideration for the services and employment Bosley was to administer, Plaintiff and Class Members provided their PI to Bosley. When Plaintiff and Class Members provided their PI to Bosley, they entered into implied contracts by which Bosley agreed to protect their PI and only use it solely to administer services and employment. As part of the offer, Bosley would safeguard the PI using reasonable or industry-standard means.

142.   Accordingly, Plaintiff and the Class Members accepted Bosley's offer and provided Bosley their PI.

143.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Bosley. However, Bosley breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PI.

144.   The losses and damages Plaintiff and Class Members sustained that are described herein were the direct and proximate result of Bosley's breaches of its implied contracts with them. Additionally, because damages may not provide a complete remedy for the breaches alleged herein, Plaintiff and Class Members are entitled to specific performance of the contracts to ensure data security measures necessary to properly effectuate the contracts maintain the security of their PI from unlawful exposure.

145.   Bosley's conduct as alleged herein also violated the implied covenant of

good faith and fair dealing inherent in every contract, and Bosley is liable to Plaintiff and Class Members for associated damages and specific performance.

## COUNT VII

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (On Behalf of Plaintiff and the Class)

146.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

147.   Inherent in every contract is that implied covenant of good faith and fair dealing, which Bosley violated by failing to maintain reasonable data security protocols, leading to the disclosure of Plaintiff's and Class Members' PI for purposes not required or permitted under the contracts or applicable law.

148.   The losses and damages Plaintiff and Class Members sustained that are described herein and were the direct and proximate result of Bosley's breaches of the implied covenant of good faith and fair dealing. Additionally, because damages may not provide a complete remedy for the breaches alleged herein, Plaintiff and Class Members are therefore entitled to specific performance of the contracts to ensure data security measures necessary to properly effectuate the contracts maintain the security of their PI from unlawful exposure.

## COUNT VIII

### BREACH OF CONFIDENCE

### (On Behalf of Plaintiff and the Class)

149.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

150.   As alleged above, Plaintiff and Class Members had agreements with Bosley that required Bosley to keep their PI confidential.

151.   Bosley breached that confidence by disclosing Plaintiff's and Class Members' PI without their authorization and for unnecessary purposes.

152.   As a result of the breach, Plaintiff and Class Members suffered damages

that were attributable to Bosley's failure to maintain confidence in their PI.

## COUNT IX

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### [Cal. Bus. & Prof. Code § 17200, *et seq*. – Unlawful Business Practices]
### (On Behalf of Plaintiff and the Class)

153.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

154.   Bosley violated Cal. Bus. and Prof. Code § 17200, et seq., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the National Class.

155.   Bosley engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' PI with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Class Members' PI in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Bosley to take reasonable methods of safeguarding the PI of Plaintiff and the Class Members.

156.   In addition, Bosley engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

157.   As a direct and proximate result of Bosley's unlawful practices and acts, Plaintiff and Class Members were injured and lost money or property, including but not limited to the price received by Bosley for the products and services, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their PI, nominal damages, and additional losses as described herein.

158.   Bosley knew or should have known that Bosley's computer systems and data security practices were inadequate to safeguard Plaintiff's and Class Members' PI

1    and that the risk of a data breach or theft was highly likely. Bosley's actions in
2    engaging in the above-named unlawful practices and acts were negligent, knowing and
3    willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class
4    Members.

5         159.   Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code
6    § 17200, et seq., including, but not limited to, restitution to Plaintiff and Class
7    Members of money or property that Bosley may have acquired by means of Bosley's
8    unlawful, and unfair business practices, restitutionary disgorgement of all profits
9    accruing to Bosley because of Bosley's unlawful and unfair business practices,
10   declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. §
11   1021.5), and injunctive or other equitable relief.

## COUNT X

### VIOLATION OF THE CALIFORNIA CONSUMER RECORDS ACT

### [Cal. Civ. Code § 1798.80, *et seq*.]

### (On Behalf of Plaintiff and the Class)

16        160.   Plaintiff re-alleges and incorporates by reference all prior paragraphs as if
17   fully set forth herein.

18        161.   Section 1798.2 of the California Civil Code requires any "person or
19   business that conducts business in California, and that owns or licenses computerized
20   data that includes personal information" to "disclose any breach of the security of the
21   system following discovery or notification of the breach in the security of the data to
22   any resident of California whose unencrypted personal information was, or is
23   reasonably believed to have been, acquired by an unauthorized person." Under section
24   1798.82, the disclosure "shall be made in the most expedient time possible and without
25   unreasonable delay . . . ."

26        162.   The CCRA further provides: "Any person or business that maintains
27   computerized data that includes personal information that the person or business does
28   not own shall notify the owner or licensee of the information of any breach of the

security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

163.   Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a.   The security breach notification shall be written in plain language;

b.   The security breach notification shall include, at a minimum, the following information:

   i.   The name and contact information of the reporting person or business subject to this section;

   ii.   A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

   iii.   If the information is possible to determine at the time the notice is provided, then any of the following:

   iv.   The date of the breach;

   v.   The estimated date of the breach; or

   vi.   The date range within which the breach occurred.

164.   The notification shall also include the date of the notice; whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided; a general description of the breach incident, if that information is possible to determine at the time the notice is provided; and the toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

165.   The Data Breach described herein constituted a "breach of the security system" of Bosley.

166.   As alleged above, Bosley unreasonably delayed informing Plaintiff and Class Members about the Ransomware Attack and Data Breach, affecting their PI,

1    after Bosley knew the Data Breach had occurred.

2        167.   Bosley failed to disclose to Plaintiff and Class Members, without

3    unreasonable delay and in the most expedient time possible, the breach of security of

4    their unencrypted, or not properly and securely encrypted, PI when Bosley knew or

5    reasonably believed such information had been compromised.

6        168.   Bosley's ongoing business interests gave Bosley incentive to conceal the

7    Data Breach from the public to ensure continued revenue.

8        169.   Upon information and belief, no law enforcement agency instructed

9    Bosley that timely notification to Plaintiff and Class Members would impede its

10   investigation.

11       170.   As a result of Bosley's violation of Cal. Civ. Code § 1798.82, Plaintiff

12   and Class Members were deprived of prompt notice of the Ransomware Attack and

13   Data Breach and were thus prevented from taking appropriate protective measures,

14   such as securing identity theft protection or requesting a fraud alert or credit freeze.

15   These measures could have prevented some of the damages suffered by Plaintiff and

16   Class Members because their stolen information would have had less value to identity

17   thieves.

18       171.   As a result of Bosley's violation of Cal. Civ. Code § 1798.82, Plaintiff

19   and Class Members suffered incrementally increased damages separate and distinct

20   from those simply caused by the Data Breach itself.

21       172.   Plaintiff and Class Members seek all remedies available under Cal. Civ.

22   Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and

23   Class Members as alleged above and equitable relief.

24       173.   Bosley's misconduct as alleged herein is fraud under Cal. Civ. Code §

25   3294(c)(3) in that it was deceit or concealment of a material fact known to the Bosley

26   conducted with the intent on the part of Bosley of depriving Plaintiff and Class

27   Members of "legal rights or otherwise causing injury." In addition, Bosley's

28   misconduct as alleged herein is malice or oppression under Cal. Civ. Code §

CLASS ACTION COMPLAINT
32

3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Bosley with a willful and conscious disregard of the rights or safety of Plaintiff and Class Members and despicable conduct that has subjected Plaintiff and Class Members to hardship in conscious disregard of their rights. As a result, Plaintiff and Class Members are entitled to punitive damages against Bosley under Cal. Civ. Code § 3294(a).

## COUNT XI

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

### (On Behalf of Plaintiff and the New York Sub-Class)

174.    Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

175.    Bosley engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

(a)    Bosley misrepresented material facts to Plaintiff and the Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PI from unauthorized disclosure, release, data breaches, and theft;

(b)    Bosley misrepresented material facts to Plaintiff and the Class by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Class Members' PI;

(c)    Bosley omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Class Members' PI;

(d)    Bosley engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PI, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data

Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45);

(e)   Bosley engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to the Class in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2).

176.   Bosley knew or should have known that the Bosley computer systems and data security practices were inadequate to safeguard the Class Members' PI entrusted to it, and that risk of a data breach or theft was highly likely.

177.   Bosley should have disclosed this information because Bosley was in a superior position to know the true facts related to the defective data security.

178.   Bosley's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and Class Members) regarding the security of Bosley's network and aggregation of PI.

179.   The representations upon which consumers (including Plaintiff and Class Members) relied were material representations (e.g., as to Bosley's adequate protection of PI), and consumers (including Plaintiff and Class Members) relied on those representations to their detriment.

180.   Bosley's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Bosley's conduct, Plaintiff and other Class Members have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their personal information and other financial accounts.

181.   As a direct and proximate result of Bosley's unconscionable, unfair, and deceptive acts and omissions, Plaintiff's and Class Members' PI was disclosed to third parties without authorization, causing and will continue to cause Plaintiff and Class

Members damages.

182.    Plaintiff and Class members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Members of the Class defined above, respectfully request that this Court:

A.    Certify this case as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiff as the Class representatives, and appoint the undersigned as Class counsel;

B.    Order appropriate relief to Plaintiff and the Class;

C.    Enter injunctive and declaratory relief as appropriate under the applicable law;

D.    Award Plaintiff and the Class pre-judgment and/or post-judgment interest as prescribed by law;

E.    Award reasonable attorneys' fees and costs as permitted by law; and

F.    Enter such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury of all claims so triable.

DATED: April 20, 2021

By: */s/ Ex Kano S. Sams II*
Ex Kano S. Sams II (SBN 192936)
Email: esams@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: 310-201-9150

Jeffrey S. Goldenberg*
E-mail: jgoldenberg@gs-legal.com
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8297

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gary E. Mason*
E-mail: gmason@masonllp.com
David K. Lietz*
E-mail: dlietz@masonllp.com
**MASON LIETZ & KLINGER LLP**
5301 Wisconsin Avenue, NW. Suite 305
Washington, DC 20016
Tel: (202) 429-2290

Gary M. Klinger*
E-mail: gklinger@masonllp.com
**MASON LIETZ & KLINGER LLP**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 202.429.2290

Charles E. Schaffer*
E-mail: cschaffer@lfsblaw.com
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

*Attorneys for Plaintiff and the Proposed Class*

*pro hac vice to be filed